**RIVERSIDE HOSPITAL, Petitioner**

v.

**DISTRICT OF COLUMBIA DEPARTMENT OF HEALTH, Respondent.**

**No. 03–AA–826.**

District of Columbia Court of Appeals.

Argued Sept. 15, 2005.

Decided March 27, 2008.

---

Joel M. Hamme, Washington, DC, with whom Marla P. Spindel, was on the brief, for petitioner.

Edward E. Schwab, Deputy Attorney General for the District of Columbia at the time the brief was filed, with whom Robert J. Spagnoletti, Attorney General at the time the brief was filed, was on the brief, for respondent.

Before WASHINGTON, Chief Judge, KRAMER, Associate Judge, and TERRY, Senior Judge.*

TERRY, Senior Judge:

Riverside Hospital ("Riverside") challenges a decision by the District of Columbia Department of Health ("the Department") which had the effect of retroactively denying Medicaid coverage to 53 of Riverside's former patients. After the Department's Office of Fair Hearings ("OFH") had ruled in Riverside's favor, the Director of the Department, in an administrative appeal, ruled that the OFH had no jurisdiction to consider Riverside's claims. Before this court Riverside contends (1) that the OFH, not the District of Columbia Board of Appeals and Review ("BAR"), as the Department contends, has jurisdiction to review Medicaid coverage disputes; (2) that Riverside has the authority to argue on behalf of those Medicaid recipients who received care that was considered not to be "medically necessary"; and (3) that the Department's failure to define the term "medically necessary" in accordance with the District of Columbia Administrative Procedure Act ("DCAPA") renders the disputed Medicaid coverage determinations invalid.[1] Accordingly,

---

* Judge Terry was an Associate Judge of the court at the time of argument. His status changed to Senior Judge on February 1, 2006.

1. Additionally, Riverside argues that the De-

Riverside asks this court to hold that the coverage determinations at issue are invalid and that the Department should be precluded from taking any further action based on those decisions.

At oral argument, this court *sua sponte* raised the issue of Riverside's standing to assert these claims, either in its own right or, alternatively, on behalf of a group of its former patients participating in the District of Columbia's Medicaid program. We later entered an order directing both parties to submit supplemental briefs discussing (1) whether Riverside has standing to maintain this proceeding, either on its own behalf or on behalf of the patients whom it purports to represent, and if so, what is the source of that standing; and (2) whether Riverside's petition for review presents a justiciable case or controversy, assuming that Riverside has standing.

We hold that Riverside does not have standing to assert the rights of the affected Medicaid recipients, even though they were formerly its patients. We further hold that, although Riverside presumably does have standing to assert its own rights, it has failed to exhaust the administrative remedies available to it before the Board of Appeals and Review. Consequently, we must affirm the Department's dismissal of Riverside's petition before the Office of Fair Hearings without considering the merits of its claims.

## I

Riverside offers inpatient psychiatric and substance abuse treatment services primarily to District of Columbia children and adolescents, many of whom are referred to Riverside by the District's Child and Family Services Agency, the Youth Services Administration, and the public schools. Some of these patients receive Medicaid benefits. Riverside has been certified to treat Medicaid patients, participating in the District's Medicaid program which reimburses hospitals on a per diem basis for psychiatric care. *See* 49 D.C. Register 8716, 8719 (2002) (to be codified at 29 DCMR § 4809.1).

Section 1902 (a)(37) of the Social Security Act, 42 U.S.C. § 1396a (a)(37) (2000), authorizes a state-designated[2] Medical Assistance Administration to review information regarding Medicaid recipients and providers, as well as service and payment data, to ensure that appropriate payments are made.[3] *See also* 29 DCMR §§ 1301 *et seq.* (1987). By contract, the District appointed Delmarva Foundation for Medical Care, Inc. ("Delmarva"), to operate as its designated Peer Review Organization ("PRO") to review the medical care provided to District of Columbia Medicaid recipients.[4] *See also* 42 C.F.R. §§ 456.1–456.6 (2000).

---

partment's adoption of the current definition of "medically necessary" and the standards used to determine whether a particular course of treatment fits that definition are "arbitrary, capricious, and unlawful."

2. Under the pertinent regulations, the District of Columbia is considered to be a state. *See* 42 C.F.R. § 400.203 (2000).

3. Providers of Medicaid services have:

[an] obligation ... to assure ... that services or items ordered or provided ... will be provided economically and only when,

and to the extent, medically necessary ... and [that those services and items] will be supported by evidence of medical necessity ... and at such time as may reasonably be required by a reviewing peer review organization....

42 U.S.C. § 1320c–5 (a) (2000).

4. *The relevant regulation provides in part:*

The Director may base his or her determination that services were excessive or of unacceptable quality on reports, including sanction reports, from ... [t]he Professional Standard Review Organization....

29 DCMR § 1301.4(a) (1987).

Acting under this authority, Delmarva reviewed a total of 1202 patient records from the years 1997–2001 to determine whether appropriate payments had been made. After completing that review, Delmarva retroactively denied care to 148 Medicaid recipients, concluding that the care provided in those instances was not "medically necessary." Delmarva sent letters to those affected recipients informing them of its overpayment determination. These letters further informed the affected recipients of their right to request that Delmarva reconsider its decision, as well as the right to make a subsequent request for reconsideration before the Department.[5] They were also told that they had a right to be represented in such proceedings by an attorney or by any person of their choosing.[6] Riverside then contacted the affected recipients and offered to act as their representative. Several of them executed an "Assignment of Insurance Benefits," whereby they purportedly assigned any interest in medical reimbursement to Riverside.

Riverside, acting on behalf of the affected recipients, submitted to the Department the necessary requests for reconsideration of 53 cases. The Department then consolidated several of the cases and began corresponding directly with counsel for Riverside.

Riverside's petitions in due course came before an administrative law judge ("ALJ") of the OFH. After some preliminary proceedings, Riverside filed with the ALJ a "motion for summary judgment," arguing (1) that "any limits of Medicaid eligibility or coverage [were] subject to the rule-making requirements" of the DCAPA, (2) that Delmarva's "secret" utilization review standards were inconsistent with federal regulations, and (3) that the coverage denials were facially invalid. The Department responded by filing a motion to dismiss Riverside's petitions, asserting that the affected beneficiaries suffered no cognizable injury and that the OFH therefore had no authority to fashion a remedy for them.

In her proposed decision, the ALJ recommended that Riverside's motion be granted and that the Department be prohibited from seeking or claiming any Medicaid reimbursement, citing *In re MedLink Hospital at Capitol Hill* (D.C. Office of Fair Hearings, October 13, 1999).[7] The

---

**5.** Federal law guarantees a hearing to an individual whose claim for medical aid is denied. *See* 42 U.S.C. § 1396a (a)(3) (2000) ("A State plan for medical assistance must ... provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness"). Accordingly, D.C.Code § 4–210.01 (2001) provides: "An applicant for, or recipient of, public assistance aggrieved by the action or inaction of the Mayor shall be entitled to a hearing."

**6.** D.C.Code § 4–210.04(a) (2001) provides in part:

[W]henever the Mayor notifies the applicant or recipient that it [*sic*] intends to take action which may or will adversely affect him or her or his or her benefits, including

changes in or terminations of assistance payments[,] [s]uch written notice shall include information that the claimant has the right to be represented by legal counsel or by a lay person who is not an employee of the District....

**7.** In *MedLink* the Director "adopted in full" the recommendation of an ALJ and, on January 12, 2000, entered the ALJ's decision "as the final decision of the Department." The ALJ had held that the Department had engaged in improper rulemaking when it accepted the PRO's interpretation of "medically necessary." As a result, the Department reversed the overpayment determinations and ordered that MedLink Hospital be reimbursed. Additionally, the ALJ found that MedLink administered "medically necessary" care to the recipients appearing before the OFH.

Director of the Department declined to adopt the ALJ's recommendation. The Director ruled instead that the OFH lacked jurisdiction because the recipients were no longer receiving medical care. Since the Department could not seek reimbursement for services already rendered, there was no "controversy" on which to rule, and thus the OFH had no jurisdiction. As the Director explained, the Department could not recover from the *recipients* of medical services (*i.e.,* the patients) any overpayments made to the *providers* of such services (such as, in this case, Riverside):

> There is no authority in [statutes or regulations] that authorizes the Department of Health to recover overpayments of Medicaid funds to providers from the patients on whose behalf services were rendered. As a result, there is no controversy or matter upon which the Office of Fair Hearings can rule.

Because the OFH had only the recipients' appeals before it, the Director said, there was no remedy that it could fashion, regardless of whether it found the payments to be proper or improper. "If the [OFH] lacks the authority to order a remedy on Respondent's or Petitioner's behalf, then there is no cognizable controversy."

After the Director issued a final decision, the Department notified Riverside that it would seek reimbursement for Medicaid claims totaling $4,507,800 for 6884 days of care and treatment which Delmarva had held to be medically unnecessary. Dissatisfied with the Director's decision, Riverside filed the instant petition for review in this court, styling itself as the petitioner.

About three months later, the Department of Health, through its Office of Program Integrity, informed Riverside by letter of its intention to recoup any past overpayments to Riverside by offsetting them against future Medicaid payments. Riverside immediately objected to the recoupment, asserting in a letter from its counsel that "medical necessity" had not been defined according to the DCAPA's rulemaking requirements, and that the proposed recoupment would cause irreparable harm both to Riverside and to its patients. In a further exchange of correspondence, Riverside advised the Department that it had already begun to experience extreme financial difficulties and asked that the recoupment be stayed pending the outcome of this litigation. The Department rejected this request, stating in a letter dated February 5, 2004, that "the facts justif[ied] the suspension" of Medicaid payments to Riverside and that Riverside's Medicaid reimbursements would therefore be reduced by $187,825 per month for twenty-four months, beginning February 20, 2004.[8] On February 9, however, Riverside filed a motion for stay in this court, which we granted, thereby barring the Department from recouping any money from Riverside during the pendency of this proceeding.

## II

### A. *General Principles*

■ Questions of standing may be raised *sua sponte* by this or any court. *See United States v. Storer Broadcasting Co.,* 351 U.S. 192, 197, 76 S.Ct. 763, 100 L.Ed. 1081 (1956); *Lee v. District of Columbia Board of Appeals & Review,* 423 A.2d 210, 215 (D.C.1980). Although Congress did not establish this court under Article III of the Constitution, we gener-

---

**8.** This letter also notified Riverside of its "right to appeal this decision" within fifteen days to the Board of Appeals and Review, citing 29 DCMR § 1307.8. Riverside filed a timely notice of appeal to the BAR "as a protective measure only." We have not been informed of the current status of that appeal, but as far as we know, it is still pending.

ally adhere to the case and controversy requirement of Article III as well as prudential principles of standing. *Speyer v. Barry*, 588 A.2d 1147, 1160 (D.C.1991) (citing cases); *see also* D.C.Code § 11–705(b) (2001) (stating that divisions of this court preside over "cases and controversies"). We look to federal standing jurisprudence, both constitutional and prudential, when considering issues of standing. *Speyer*, 588 A.2d at 1160 (citing *Community Credit Union Services, Inc. v. Federal Express Services Corp.*, 534 A.2d 331, 333 (D.C. 1987)).

To meet the requirements of constitutional or Article III standing, a party must demonstrate (1) an actual or imminent threat of injury (2) that is attributable to the defendant, and (3) that the injury is redressable through adjudication. *Speyer*, 588 A.2d at 1160; *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (Article III standing requirements are met when a party demonstrates (1) "an injury in fact," (2) "a causal connection between the injury and the conduct" of which the party complains, and (3) redressability, *i.e.*, that it is "likely" that a favorable decision will redress the injury). An injury in fact is one that is both "(a) concrete and particularized ... and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560, 112 S.Ct. 2130; *see Friends of Tilden Park, Inc. v. District of Columbia*, 806 A.2d 1201, 1206–1207 (D.C.2002).

In addition to constitutional standing requirements, courts have developed "prudential principles" that function as self-imposed restrictions on jurisdiction. *See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 474, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982); *Community Credit Union Services*, 534 A.2d at 333. Such restrictions are designed to safeguard our tripartite system of government and promote the resolution of questions by the appropriate branch of government. *Valley Forge*, 454 U.S. at 474, 102 S.Ct. 752. The Supreme Court has summarized these principles to require: (1) that "the plaintiff generally must assert his own legal rights and interests," (2) that courts avoid "abstract questions of wide public significance which amount to generalized grievances," and (3) that "[a] plaintiff's complaint fall within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Id.* at 474–475, 102 S.Ct. 752 (citations and quotation marks omitted); *see also Dupont Circle Citizens Ass'n v. Barry*, 455 A.2d 417, 421 (D.C.1983) (articulating a "three-pronged standard" to determine standing when seeking review of an administrative action: "A petitioner must allege (1) that the challenged action has caused him injury in fact, (2) that the interest sought to be protected by petitioner is arguably within the zone of interests protected under the statute or constitutional guarantee in question, and (3) that no clear legislative intent to withhold judicial review is apparent" (citing *Lee*, 423 A.2d at 216)).

## B. *Riverside's Standing to Assert the Rights of Its Patients*

As a prudential matter, the Supreme Court generally has required a litigant to "assert his own legal rights and interests; he cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *see also Singleton v. Wulff*, 428 U.S. 106, 113–114, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976). This general prohibition against third-party standing is intended to promote "the fundamental purpose of the standing requirement by ensuring that courts hear only concrete disputes between interested litigants who will frame the issues properly." *Harris v. Evans*, 20 F.3d

1118, 1121 (11th Cir.1994). Enforcement of the prohibition reduces the likelihood that courts will "adjudicate [a third party's] rights unnecessarily, [when] it may be that in fact the holders of those rights either do not wish to assert them, or will be able to enjoy them regardless of whether the in-court litigant is successful or not." *Singleton,* 428 U.S. at 113–114, 96 S.Ct. 2868.

The Supreme Court, however, has recognized some instances in which the prohibition on the assertion of a third party's rights may be overlooked in certain situations, usually involving attorney-client, buyer-seller, or physician-patient relationships. *See, e.g., U.S. Department of Labor v. Triplett,* 494 U.S. 715, 110 S.Ct. 1428, 108 L.Ed.2d 701 (1990) (an attorney may challenge a restriction on attorney's fees by asserting the due process rights of his client); *Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976) (licensed beer vendor is entitled to assert the equal protection rights of a customer in challenging a statutory scheme which limits the sale of beer based on age and gender); *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (Planned Parenthood official and physician may assert the constitutional rights of contraceptive users with whom they have a professional relationship). But these cases, we emphasize, are exceptions to the general rule.

■ In *Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), the Supreme Court outlined three "criteria" which must be "satisfied" before a litigant can bring an action on behalf of a third party: (1) "[t]he litigant must have suffered an 'injury in fact,' thus giving him or her a 'sufficiently concrete interest' in the outcome of the issue in dispute"; (2) "the litigant must have a close relationship to the third party"; and (3) the litigant must demonstrate "some hindrance to the third party's ability to protect his or her own interests." *Id.* at 411, 111 S.Ct. 1364 (citing *Singleton* ).[9] Thus third-party standing focuses not on the nature of the claim asserted, but rather on "who is asserting the claim and why the holder of the asserted right is not before the court." *American Immigration Lawyers Ass'n v. Reno,* 339 U.S.App.D.C. 341, 346, 199 F.3d 1352, 1357 (2000).

■ Riverside contends that it meets the requirements of third-party standing, thereby entitling it to assert the rights of the affected Medicaid recipients in this proceeding. Noting that once the coverage determinations became final and served as the basis for the recoupment notices sent by the Department, Riverside asserts that it has suffered an injury sufficient to establish a concrete interest in the outcome of the recipients' coverage determinations. Moreover, Riverside asserts that its relationship with the recipients—former patients of its hospital—suffices as

---

**9.** Although the Supreme Court in *Powers* characterized these three factors as "criteria" that must be "satisfied" in order to establish third-party standing, in *Singleton* the Court referred to these factors as "factual elements" that may justify an exception to the general prohibition against third-party standing. *Singleton,* 428 U.S. at 117, 96 S.Ct. 2868. Thus it is not entirely clear from *Powers* whether all of the factors must be met in order to establish third-party standing. However, in its most recent opinion on the subject, *Kowalski*

*v. Tesmer,* 543 U.S. 125, 125 S.Ct. 564, 160 L.Ed.2d 519 (2004), the Court noted "that there may be circumstances where it is necessary to grant a third party standing to assert the rights of another. But we have limited this exception by requiring that a party seeking third-party standing make two additional showings [beyond an injury in fact]." *Id.* at 129–130, 125 S.Ct. 564. Thus *Kowalski* suggests that a litigant must meet all three requirements in order to assert the rights of others.

a "close relationship" as that term is used in *Powers*. Riverside also maintains that it is better suited to spearhead this litigation because these former patients, as Medicaid recipients, suffer from inadequate financial resources and a potential lack of "requisite training or education" to protect their own interests. Finally, Riverside argues that the assignment-of-rights forms signed by the affected recipients create the necessary nexus between the hospital and its former patients.

As this court observed a few years ago, " '[w]hether a party is asserting its own rights, as opposed to seeking to vindicate the rights of a third party, is often a difficult question.' " *Executive Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724, 730 (D.C.2000) (quoting *Benjamin v. Aroostook Medical Center, Inc.*, 57 F.3d 101, 105 (1st Cir.1995)). For two reasons, however, we need not resolve all the potential difficulties in this case. First, Riverside's asserted injury—its potential debt to the District—has no relation to the supposed dispute between the Department and the affected Medicaid recipients. Second, although Riverside frames the issue as one involving third-party standing, in actuality Riverside makes no attempt to assert the rights of the affected beneficiaries because, as we shall show in a moment, their rights have not been infringed or even threatened. Accordingly, we hold that Riverside fails to satisfy the "criteria" (see note 9, *supra*) for third-party standing.

Riverside cannot demonstrate a "concrete interest" in the outcome of the dispute between the Department and the affected Medicaid recipients because, as the Director of the Department of Health pointed out, there is no dispute between the Department and those recipients. Neither District law nor federal law authorizes the Department to seek reimbursement for the treatment that has been rendered to those recipients, Riverside's former patients; on the contrary, a statute expressly forbids any such action by the District.[10] Consequently, Riverside cannot demonstrate a "concrete interest" in the outcome of a controversy adjudicated by the OFH because there is no such controversy.[11] This case presents the exact problem of which the Supreme Court warned in *Singleton*: courts should not indulge plaintiffs (or appellants) who seek to litigate the rights of third parties when those rights have not been diminished or otherwise threatened. *See* 428 U.S. at 113–116, 96 S.Ct. 2868.

We therefore hold that Riverside has no standing to assert any rights (or putative rights) of its former patients who received Medicaid benefits.

## III

Riverside also contends that, independently of its supposed standing to assert the rights of its former patients, it also has standing in its own right to challenge the decision of the Department. First, Riverside asserts that it has been threatened with the requisite injury in fact; that is, the determinations by Delmarva and the subsequent recoupment notices make clear

---

**10.** D.C.Code § 4–215.01 (2001) provides in pertinent part:

  Public assistance awarded under this chapter shall not be transferable or assignable ... and none of the money paid or payable to any recipient under this chapter shall be subject to execution, levy, attachment, garnishment, or other legal process,

or the operation of any bankruptcy or insolvency law.

**11.** For this reason we need not address the Department's argument that the assignment-of-rights forms executed by Riverside's former patients do not entitle Riverside to act on their behalf. *See* 42 U.S.C. § 1396a (a)(32) (2000).

that the Department will withhold future Medicaid payments due and owing to Riverside, jeopardizing its financial well-being. Moreover, Riverside argues in its supplemental brief that "provider standing has been recognized in the Medicaid context as to beneficiary eligibility and coverage issues." Thus Riverside maintains that there is no impediment, statutory or otherwise, precluding our review of its claims.

■ Undoubtedly the recoupment notices, if and when they are carried out, will affect Riverside's bottom line, and for that reason we agree that Riverside has shown that the coverage determinations and the resulting threat of recoupment constitute an injury sufficient for the purposes of Article III standing. *See, e.g., Arthur v. District of Columbia*, 857 A.2d 473, 488 n. 19 (D.C.2004) (holding that the District had standing to raise claims on behalf of the appellant because the District had "a direct financial stake in supporting the position that [appellant's former wife] is the owner of the underlying funds"). However, this court, at least for now, is not the proper forum for a review of Riverside's claims. The Council of the District of Columbia has determined that the Board of Appeals and Review is that forum, and the exhaustion doctrine requires that Riverside present its claims initially to that body, or its successor.[12] By petitioning this court for review of the Department's final decision, Riverside has failed to exhaust its administrative remedies.

■ It is a bedrock principle of administrative law "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative

remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 82 L.Ed. 638 (1938) (footnote omitted).[13] In this instance District of Columbia law makes plain that the BAR, or its successor, is the appropriate body to review the coverage determinations at issue here. Although the Department may have previously considered arguments relevant to providers such as Riverside when reviewing coverage determinations, a review of the established hearing procedures reveals that such hearings provide a forum only for the recipients of Medicaid benefits, *not providers*, to challenge those determinations.

D.C.Code § 4–210.02(a) (2001) affords "a fair hearing to *any applicant for or recipient of* public assistance whose claim for assistance has been denied ... or who is aggrieved by any other action or inaction of the Mayor" (emphasis added). D.C.Code § 4–210.04(a) provides that "[w]ritten information regarding the right to request a hearing ... shall be furnished by the Mayor *to each public assistance applicant or recipient* ...." Such written notice shall include information that the claimant has the right to be represented by legal counsel or by a lay person who is not an employee of the District; that he may bring witnesses in his or her behalf; [and] that reasonable expenses ... will be paid by the Mayor" (emphasis added). D.C.Code § 4–210.07(1) further instructs that the claimant "may be represented at the hearing ... either by an attorney or lay person; provided that such representative shall serve only in an advisory capacity to the claimant...." These provisions

---

**12.** The Department states in its supplemental brief that "[a]t the time the appeal was filed, the forum for these disputes was the Board of Appeals and Review (BAR); the Office of Administrative Hearings has [since then] taken over the work of the BAR." *See* D.C.Code § 2–1831.03(a)(3) (2007 Repl.). We assume,

absent any showing to the contrary, that the administrative remedies formerly available to Riverside before the BAR remain available before the Office of Administrative Hearings.

**13.** In the omitted footnote, the Court cites a number of cases dating back as far as 1898.

make clear that the recipients of public assistance benefits may challenge decisions relating to those benefits in forums such as the OFH, but nowhere does the statute allow for the *providers* of such benefits to challenge coverage denials.

In contrast, the District's Municipal Regulations set forth the hearing procedures available to providers of Medicaid benefits who wish to challenge benefit-related determinations made by the Department. The regulations state that a provider must be excluded from Medicaid reimbursement if, among other things, the provider has "[f]urnished or ordered services under Medicaid that are substantially in excess of the recipient's needs...." 29 DCMR § 1301.2(b) (1987). Alternatively, the Director may suspend Medicaid payments to a provider in order to recover overpayments previously made to that provider. 29 DCMR § 1305.1 (1987).[14] In such a case, however, the decision to suspend payments does not impede the provider's right to challenge the suspension before the BAR.[15] If the Director decides to deny reimbursement, he must send a written notice of that decision, informing the provider of its "right to request a hearing by filing a notice of appeal with the D.C. Board of Appeals and Review." 29 DCMR § 1303.4(f) (1987). As we have seen, *supra* note 8, Riverside filed such a notice.

Once a suspension has been put into effect, the provider may first seek administrative review by submitting a written request to the Department's Office of Program Integrity.[16] After a written determination has been made, the provider may note an appeal to the Board of Appeals and Review within forty-five days after receiving notice of that decision. 50 D.C. Register 3957, 3971 (2003) (to be codified at 29 DCMR § 5011.4).

Riverside argues that it should not be forced to present its claims to the BAR, given the Department's long-standing practice of adjudicating coverage determinations before the OFH, as occurred in *MedLink Hospital*. Moreover, Riverside asserts that dismissal of this case would be unfair, given the time that has elapsed since Delmarva issued the disputed coverage determinations. Although the Director's decision to dismiss Riverside's claims before the OFH represented an undeniable change of position from *MedLink*, and possibly other cases as well, we are not persuaded that such a change would justify our overlooking or ignoring the requirement that Riverside first exhaust its administrative remedies before seeking a decision from this court. As for

---

**14.** 29 DCMR § 1305.1 states in pertinent part:

Payments otherwise authorized to be made to a provider under the District of Columbia Medicaid Program may be suspended, in whole or in part, by the Director ... [if the] Director has determined that the provider to whom the payments are to be made has been overpaid....

Section 1306.1 of the regulations requires the Director to "notify the provider of his or her intention to suspend payments, in whole or in part, and the reasons for making the suspension." Under section 1306.4, the provider may submit, within thirty days after the notice is sent, "documentary evidence and written argument against the proposed action."

**15.** 29 DCMR § 1307.7 (1987) provides:

The Director's implementation of a suspension, in whole or in part, does not in any way abrogate the right of the provider to file an appeal with the D.C. Board of Appeals and Review and to have a final decision rendered before final liability is established.

**16.** When the Department seeks recoupment, a provider "shall have sixty days from the date of the NR [Notice of Reimbursement] to request an administrative review of the NR." 50 D.C. Register 3957, 3970 (2003) (to be codified at 29 DCMR § 5011.1).

the passage of time, our stay of the recoupment payments should suffice to minimize any unfairness attributable to delay, especially when we consider that Riverside's arguments are based mainly on the interpretation of statutes and regulations rather than on the facts of any particular recipient's case.

■■■ This court has long and consistently held "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Fisher v. District of Columbia,* 803 A.2d 962, 964 (D.C.2002) (citations omitted). The rule requiring exhaustion of administrative remedies is applicable when a claim is cognizable first by an administrative agency alone; "judicial interference is withheld until the administrative process has run its course." *United States v. Western Pacific R.R.,* 352 U.S. 59, 63, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956). The exhaustion requirement promotes the appropriate relationship between courts and administrative agencies, thereby affording the courts the benefit of the agencies' expertise. The doctrine also fosters judicial efficiency by development of a factual record before the agency, which—at least in some cases— will eliminate the need for judicial review. *See Barnett v. District of Columbia Dep't of Employment Services,* 491 A.2d 1156, 1160 (D.C.1985). We know from *Barnett* and other cases that the exhaustion requirement is "not jurisdictional," *id.* at 1163, but the case law also tells us that it may be overlooked or ignored only "in exceptional cases." *Id.; see id.* at 1164 (concurring opinion) ("cases which allow the exhaustion requirement to be relaxed all speak in terms of 'exceptional,' 'extraordinary,' or 'compelling' circumstances"); *see also Dano Resource Recovery, Inc. v. District of Columbia,* 566 A.2d 483, 486 (D.C.1989) (listing as exceptions to the exhaustion doctrine "inadequate remedy, unavailable remedy, and futility"). Riverside

has not offered, nor are we aware of, any reason why its case would be unsuitable for initial review by the BAR or its successor.

## IV

To the extent that Riverside purports to be asserting the rights of the affected Medicaid recipients, its former patients, we hold that it has no standing to do so, and accordingly we affirm the final decision of the Department of Health. Insofar as Riverside seeks in this court to assert its own rights, we hold that it has failed to exhaust its administrative remedies, and to that extent we dismiss Riverside's petition for review, without prejudice to Riverside's pursuit of any available administrative remedies.

*Affirmed in part, dismissed in part.*