*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

## Nos. 16-CV-458, 16-CV-459, & 16-CV-500

RUBY NICDAO, LARRY CIRIGNANO, AND JONATHAN DARNEL, APPELLANTS,

V.

TWO RIVERS PUBLIC CHARTER SCHOOL, INC., APPELLEE.

Appeals from the Superior Court
of the District of Columbia
(CAB-9512-15)

(Hon. Jeanette J. Clark, Trial Judge)

(Argued March 11, 2020                                    Decided June 9, 2022)

*Stephen M. Crampton*, of the bar of the States of Mississippi, Tennessee, New Mexico, and Texas, *pro hac vice*, by special leave of court, with whom *Patrick G. Senftle* was on the brief, for appellant Ruby Nicdao.

*Mathew D. Staver,* with whom *Horatio G. Mihet*, of the bar of the States of Florida and Ohio, *pro hac vice*, by special leave of court and *Roger K. Gannam*, of the bar of the State of Florida, *pro hac vice*, by special leave of court, were on the brief, for appellant Larry Cirignano.

*John R. Garza* for appellant Jonathan Darnel.

*Michael L. Murphy*, with whom *Cary Joshi* was on the brief, for appellee.

Before GLICKMAN, *Associate Judge*, and WASHINGTON and FISHER,[*] *Senior Judges*.

---

[*] Judge Fisher was an Associate Judge at the time of oral argument. His status changed to Senior Judge on August 23, 2020.

WASHINGTON, *Senior Judge*:  Appellants Ruby Nicdao, Larry Cirignano, and Jonathan Darnel appeal a judgment denying their special motions to dismiss under the District of Columbia Anti-Strategic Lawsuits Against Public Participation ("Anti-SLAPP") Act.  For the reasons that follow, we reverse because appellee Two Rivers Public Charter School lacked third-party standing to assert a claim for intentional infliction of emotional distress ("IIED"), and its other claims cannot succeed on their own.

## I.  Facts and Proceedings

On August 27, 2015, three individuals arrived and occupied the sidewalk in front of Two Rivers Public Charter School ("Two Rivers").  The individuals were protesting the Planned Parenthood facility being built next to the school and each held graphic signs of aborted fetuses and shouted at students and parents entering the school.  On November 1, 2015, Appellant Jonathan Darnel sent an email to several school administrators in which he asked them what they would do to prevent the Planned Parenthood facility from opening and implied that the school would face more protests if it did not act.  On the morning of November 16, 2015, four individuals, including appellant Darnel, protested on the sidewalk in front of

the school, where they held graphic signs. The individuals allegedly followed students onto school property to hand them brochures that said things like "[t]ell your parents they're going to kill kids next door!" and "[t]he school will have a lot of problems if you ignore the problem!" According to Two Rivers, "[m]any parents and students felt they were being chased and threatened by [appellant] Darnel . . . ." On November 23, 2015, more protesters returned to the school with graphic signs and shouted at students and parents; the group included appellants Darnel, Ruby Nicdao, and Larry Cirignano. Two Rivers claimed that as school officials redirected students to a side entrance of the school, appellant Nicdao "followed the students into the alley and continued shouting at them, making parents and students feel threatened and unsafe." Finally, appellant Darnel and other individuals returned to the school on December 7, 2015, and handed out leaflets to students and parents protesting the Planned Parenthood facility being built; appellant Darnel apparently followed one parent and student towards the metro saying the parent was "in denial" and also jogged after a group of students who had ignored him and forced the leaflets into their hands. In addition to the ways appellants' conduct allegedly impacted the students and their families, Two Rivers claimed that the protests prevented administrators and teachers from being able to plan for the school day, forced them to make "extraordinary efforts" to protect students,

inhibited the "core educational goals of the school," and threatened the charter school's funding, which depends on enrollment.

Two Rivers filed its complaint on December 9, 2015, asserting claims for IIED, private nuisance, and conspiracy to create a private nuisance. Appellants filed motions to dismiss under Super. Ct. Civ. R. 12(b)(1), lack of subject-matter jurisdiction, and 12(b)(6), failure to state a claim. Appellants also filed a special motion to dismiss under the D.C. Anti-SLAPP Act, D.C. Code § 16-5501 *et seq.* (2021 Supp.). The trial court held a hearing on the motions on April 29, 2016. At the hearing, the trial court held that Two Rivers had standing to bring its claims[1] and denied appellants' 12(b) motions to dismiss. Regarding the special motion to dismiss under the Anti-SLAPP Act, the trial court found that while appellants made a prima facie showing that Two Rivers' claims stemmed from their protests on an issue of public interest, abortion, Two Rivers was likely to succeed on the merits of its claims. Thus, it denied appellants' special motions to dismiss under the Anti-SLAPP Act. Appellants timely appealed. Only the trial court's ruling on the Anti-SLAPP special motions to dismiss is properly before us on this appeal.

---

[1] The trial court stated, however, that the Trustees of Two Rivers did not have standing and dismissed them from the case. That decision was not appealed.

## II.  Third-Party Standing to Bring IIED Claim

Appellants argue that the trial court erred in granting Two Rivers standing to proceed in the case.  In its ruling from the bench on the IIED claim, the trial court held that Two Rivers was bringing the claim on behalf of its students and parents, and that the school had third-party standing because they "could not financially afford to litigate the case" and because "they were fearful."[2]  We review the trial court's standing decision de novo.  *UMC Dev., LLC v. District of Columbia*, 120 A.3d 37, 42 (D.C. 2015).  "Although Congress did not establish this court under Article III of the Constitution, we generally adhere to the case and controversy requirement of Article III as well as prudential principles of standing."  *Riverside Hosp. v. District of Columbia Dep't of Health*, 944 A.2d 1098, 1103-04 (D.C. 2008).  Standing requires "an actual or imminently threatened injury that is attributable to the defendant and capable of redress by the court."  *Friends of Tilden Park, Inc. v. District of Columbia*, 806 A.2d 1201, 1206-07 (D.C. 2002).  "Standing is a threshold jurisdictional question which must be addressed prior to and

---

[2]  Though the trial court did not specify exactly what the parents were fearful of in making its ruling, counsel for Two Rivers argued at the hearing on the motion to dismiss that the parents were afraid to bring a lawsuit on behalf of their children due to concerns about personal privacy.

independent of the merits of a party's claims." *Grayson v. AT&T Corp.*, 15 A.3d 219, 229 (D.C. 2011) (en banc) (internal quotation marks omitted).[3]

In addition to constitutional standing requirements, "courts have developed 'prudential principles' that function as self-imposed restrictions on jurisdiction." *Riverside Hosp.*, 944 A.2d at 1104. Third-party standing is one such prudential principle and an "alternative threshold question" we must also address. *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004). "As a prudential matter, the Supreme Court generally has required a litigant to 'assert his own legal rights and interests; he cannot rest his claim to relief on the legal rights or interests of third parties.'" *Riverside Hosp.*, 944 A.2d at 1104 (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). "Enforcement of the prohibition [against third-party standing] reduces the likelihood that courts will 'adjudicate [a third party's] rights unnecessarily, [when] it may be that in fact the holders of those rights either do not wish to assert them, or will be able to enjoy them regardless of whether the in-court litigant is successful or not.'" *Id.* at 1105 (alterations in original) (quoting *Singleton v. Wulff*, 428 U.S. 106,

---

[3] Two Rivers' suggestion that we merely affirm the lower court's standing decision and "hue to the issues raised in [appellants'] Special Motions" is therefore unavailing, since "the basic function of the standing inquiry is to serve as a threshold a plaintiff must surmount *before* a court will decide the merits question about the existence of a claimed legal right." *Grayson*, 15 A.3d at 229 (emphasis in original).

113-14 (1976)). To be successful, a claim brought on behalf of a third party requires (1) an injury in fact to the litigant bringing the claim, (2) a close relationship between the litigant and the third party, and (3) some hindrance to the third party's ability to protect his or her own interests. *See id.*; *Powers v. Ohio*, 499 U.S. 400, 410-11 (1991). "The plaintiff bears the burden to establish standing." *UMC Dev.*, 120 A.3d at 43.

After considering these principles, we hold that the trial court erred in ruling that Two Rivers had standing to proceed with the IIED claim. We assume, without deciding, that Two Rivers has met the Article III standing requirements,[4] as well as step (1) of third-party standing, which is an injury in fact to the litigant. Schools suffer injury from "arbitrary, unreasonable, and unlawful interference with their patrons." *Pierce v. Society of Sisters*, 268 U.S. 510, 536 (1925).[5] Under this broad

---

[4] *See Kowalski*, 543 U.S. at 129 ("[W]e do not focus on the constitutional minimum of standing . . . [i]nstead, we shall assume the [respondents] have satisfied Article III and address the alternative threshold question whether they have standing to raise the rights of others.").

[5] To the extent that Two Rivers is arguing that it meets the standards for third-party standing based on *Pierce*, that case was decided before the modern third-party standing doctrine was developed; thus, while it does not directly address the three criteria litigants must satisfy to establish third-party standing, *see, e.g.*, *Powers*, 499 U.S. at 410-11, we do not understand *Pierce* to confer standing to schools asserting claims on behalf of their students and families without regard to

(continued…)

standard, Two Rivers can plausibly claim it is injured by potentially unlawful interference with their students' right not to be harassed by abortion protesters. As a school, Two Rivers also has a close relationship with its students and their parents, and thus meets the second requirement for third-party standing. *See District of Columbia v. Doe*, 524 A.2d 30, 32 (D.C. 1987) (discussing a school's "obligation to exercise reasonable and ordinary care for the protection of pupils to whom it provides an education").

Two Rivers' challenge falters, however, because it has not "demonstrate[d] 'some hindrance to the third party's ability to protect his or her own interests.'" *Riverside Hosp.*, 944 A.2d at 1105 (quoting *Powers*, 499 U.S. at 411). Two Rivers claims, and the trial court held, that the students and parents face a financial hindrance to bringing suit themselves. Arguments focused on financial limitations

---

(…continued)

the distinct third-party standing requirements that the Supreme Court has since articulated, and we must apply these requirements to the facts of this case. Two Rivers seems to recognize this additional burden, as it cites the same three criteria and discusses *Pierce* and its progeny within this framework. Moreover, *Pierce* is not directly on point here because Two Rivers is not asserting the "constitutional right of parents to direct their children's education" that the Court recognized in *Pierce*. *Ohio Ass'n of Indep. Sch. v. Goff*, 92 F.3d 419, 422 (6th Cir. 1996) (citing *Runyon v. McCrary*, 427 U.S. 160, 175 n.13 (1976) and *Pierce*, 268 U.S. at 535-36; *see also Warth*, 422 U.S. at 500 (noting that standing "often turns on the nature and source of the claim asserted," particularly in regards to prudential rules of standing).

as the primary hindrance for third-party standing face a high bar at the Supreme Court, where the Court has rejected criminal defense lawyers' third-party suits on behalf of indigent defendants because "the lack of an attorney here is [not] the type of hindrance necessary to allow another to assert the indigent defendants' rights." *Kowalski*, 543 U.S. at 132. On this record, we do not see any reason financial considerations are a sufficient hindrance for Two Rivers to assert third-party standing. We also do not see any privacy concerns proving enough of a hindrance to warrant third-party standing. While parents of the students may have been "fearful" about the publicity associated with their children suing appellants, minors' names are automatically redacted at the trial court. *See* Super. Ct. Civ. R. 5.2(a). The students may have a valid IIED claim against the abortion protesters. But on this record, they should be the ones to bring the case, not Two Rivers. Thus, we hold that the trial court erred in holding that Two Rivers had third-party standing to bring a claim for IIED on behalf of its students and their parents.

### III.    Private Nuisance and Conspiracy Claims

In contrast to the IIED claim, Two Rivers asserted its own rights in bringing claims of private nuisance and conspiracy to create a private nuisance, contending appellants' actions interfered with its use and enjoyment of the school buildings,

and the trial court recognized its "business and property" interests that were threatened by appellants' alleged conduct.  After the trial court ruled that appellants made a prima facie showing that Two Rivers' claims arise from appellants' protected activity under the Anti-SLAPP Act,[6] the burden shifted to Two Rivers to "demonstrate[] that the claim is likely to succeed on the merits" in order to defeat the special motion to dismiss.  D.C. Code § 16-5502(b).  To evaluate the likely success of Two Rivers' claims, we consider whether a factfinder, under the "applicable legal and constitutional standards[,] could reasonably find that the claim is supported in light of the evidence that has been produced or proffered in connection with the motion."  *Competitive Enter. Inst. v. Mann*, 150 A.3d 1213, 1232 (D.C. 2016), as amended (Dec. 13, 2018).  We review this determination de novo.  *Id.* at 1240.

Because the IIED claim must fail for lack of third-party standing, Two Rivers cannot show that its other two claims are likely to succeed.  "As an independent tort, claims of nuisance have . . . not been viewed favorably by this court" and we have often said that "nuisance is a type of damage and not a theory of recovery in and of itself . . . ."  *District of Columbia v. Beretta, U.S.A., Corp.*, 872 A.2d 633,

---

[6] Two Rivers does not challenge this ruling.

646 (D.C. 2005) (en banc) (quoting *Jonathan Woodner Co. v. Breeden*, 665 A.2d 929, 934 (D.C. 1995)). Therefore, "with very rare exceptions, there is no liability [for nuisance] unless the case can be fitted into one of the[] familiar categories" of tort liability, including an "intentional invasion of the plaintiff's interests" that is otherwise tortious, such as IIED. *Ortberg v. Goldman Sachs Grp.*, 64 A.3d 158, 167 (D.C. 2013) (internal quotations, brackets, and emphasis omitted).[7] Two Rivers acknowledges this and only meaningfully argues the private nuisance claim based on alleged liability for IIED.

Even assuming that private nuisance can stand on its own without a separate tort – as the trial court did – on the occasions when we have recognized private nuisance as actionable, we have required "'some degree of permanence' such that the 'continuousness or recurrence of the things, facts, or acts which constitute the nuisance,' give rise to an 'unreasonable use.'" *Wood v. Neuman*, 979 A.2d 64, 78 (D.C. 2009) (quoting *Reese v. Wells*, 73 A.2d 899, 902 (D.C. 1950)) (collecting

---

[7] Our most recent cases have noted an inconsistency in our case law about whether private nuisance can be an independent tort. *See Ortberg*, 64 A.3d at 169 n.5 (noting that "the issue [of] whether private nuisance is recognized as an independent tort in the District of Columbia[] must be resolved by the en banc court"); *see also Wang v. 1624 U St., Inc.*, 252 A.3d 891, 897 n.6 (D.C. 2021) (comparing majority opinion and opinion concurring in part and dissenting in part in *Ortberg*).

cases). Such permanence amounting to an unreasonable use is not present here, where Two Rivers has alleged appellants were present outside the school on three occasions, and appellants Cirignano and Nicdao are only named in one of the incidents. *See Ortberg*, 64 A.3d at 163, 168-69 (holding that even if private nuisance is cognizable as an independent tort, eight demonstrations outside company's office building and five demonstrations at managing director's home over the course of several weeks, involving "chanting slogans and some vague threats" and one "tense encounter" with a neighbor, did not result in "substantial injury or continuous or constantly recurring acts that constituted an unreasonable interference with [plaintiffs'] use of their property" (internal quotation marks omitted)).

Because the private nuisance claim is legally insufficient, it is necessarily not "likely to succeed on the merits." *See American Stud. Ass'n v. Bronner*, 259 A.3d 728, 741 (D.C. 2021). Finally, because we hold the private nuisance claim cannot stand, Two Rivers cannot demonstrate a likelihood of success on civil conspiracy to create a private nuisance, which requires an underlying tort. *Ortberg*, 64 A.3d at

162 n.2.[8]  We therefore hold that the trial court erred in holding that Two Rivers had demonstrated it was likely to succeed on the merits of its private nuisance and conspiracy to create a private nuisance claims in order to overcome the Anti-SLAPP special motion to dismiss.

*****

For the foregoing reasons, the trial court's decision is reversed, and we remand so that it may dismiss the case.

*So ordered.*

---

[8] Two Rivers also argues we should remand for additional discovery, which the trial court, having discretion to order limited discovery relating to the Anti-SLAPP motion, D.C. Code §16-5502(c)(2), denied as moot when it denied the special motion to dismiss. However, Two Rivers has not identified any needs for targeted discovery that would address the legal deficiencies noted above; rather, it focuses on evidence of coordination between appellants, appellants' activities that have occurred after the ruling on the special motion to dismiss, and general developments in the NoMa area. Similarly, we decline to consider evidence submitted to the trial court after its ruling on the special motion to dismiss.