*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 24-CV-1151

REMUS ENTERPRISES 1, LLC, APPELLANT,

V.

QUINN BREECE, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2024-CAB-001702)

(Hon. Yvonne M. Williams, Motions Judge)

(Argued March 18, 2026                    Decided April 30, 2026)

*Solon Phillips* for appellant.

*Jude E. Wikramanayake* for appellee.

Before EASTERLY and SHANKER, *Associate Judges*, and RUIZ, *Senior Judge*.

SHANKER*, Associate Judge*: Punctuation matters. At the heart of this case is the placement of a comma. Appellant Remus Enterprises 1, LLC ("Remus 2023") sued appellee Quinn Breece in Superior Court asserting tort claims arising out of Remus 2023's alleged ownership of, and desire to sell, a parcel of property located at 3308 16th Street, NE, in Washington, D.C. But a consent judgment in another case established that a different entity with a name containing all the same words

and letters but a differently placed comma—Remus Enterprises, 1 LLC ("Remus 2018")—was the real owner of the property. Because Remus 2023 does not have standing to sue based on a different entity's property interest, we conclude that the trial court lacked subject-matter jurisdiction over the case, and we affirm the trial court's dismissal of Remus 2023's complaint, although on grounds different from those relied on by the trial court.

## I. Background

## A. Trial Court Proceedings

In March 2024, Remus 2023 sued Ms. Breece for her alleged interference with the attempted sale of 3308 16th Street, NE, a parcel of property in the District of Columbia. Remus 2023 alleged that it purchased the 16th Street property in February 2023 "as an investment property, with the intentions of renovating and reselling" it. The complaint further alleged that Remus 2023 "entered into [a] listing agreement with a realtor in the District" who "listed the Property for $1,350,00.00," and that there was a "Buyer who ha[d] contracted to purchase the Property." Paragraph 14 of the complaint, however, alleged that an entity with a comma in a different place in its name, "Remus Enterprises, 1 LLC owns the subject property and the subject property has not been transferred to any other entity."

In its complaint, Remus 2023 alleged that Ms. Breece filed a lawsuit on behalf of Yoni Nasi—not a party to this appeal—who purported to have an interest in the 16th Street property by virtue of his partial "owner[ship]" of the LLC that owned the property. Remus 2023 asserted that Mr. Nasi did not hold and had never held such an interest. The complaint alleged that six months after Remus 2023 allegedly purchased the property, Ms. Breece filed a notice of lis pendens in D.C. containing information about Mr. Nasi's lawsuit. In February 2024, Ms. Breece purportedly canceled this first notice of lis pendens after receiving a letter from Remus 2023 demanding that she do so. The next day, the complaint alleged, she filed another notice of lis pendens based on a new underlying lawsuit. Remus 2023 contended that Ms. Breece filed this notice of lis pendens to interfere with the listing and sale of the 16th Street property.

The complaint brought two causes of action: slander of title and tortious interference with contract. Ms. Breece moved to dismiss the complaint for failure to state a claim under Super. Ct. Civ. R. 12(b)(6), and Remus 2023 opposed. Several weeks later, Remus 2023 moved for leave to amend the complaint. *See* Mot. for Leave to Am., *Remus Enters. 1, LLC v. Breece*, No. 2024-CAB-001702 (D.C. Super. Ct. June 26, 2024).

The trial court granted the motion to dismiss and denied Remus 2023 leave to amend, concluding that the complaint failed to state a claim on which relief could be granted and that Remus 2023's proposed amendments would be futile. Remus 2023 then filed a motion for reconsideration of the trial court's order. The trial court applied the legal standards in Superior Court Civil Rules 59(e) and 60(b) and denied the motion. *See* Order Denying Mot. for Recons., *Remus Enters. 1, LLC v. Breece*, No. 2024-CAB-001702 (D.C. Super. Ct. Oct. 28, 2024). Remus 2023 appealed only from the trial court's August 1, 2024, order granting Ms. Breece's motion to dismiss under Rule 12(b)(6) and denying Remus 2023's motion for leave to amend.

## B.    The Consent Judgment in the *Nasi* Case

During the pendency of this case at the trial level, Remus 2023 was a party to a related case in D.C. Superior Court that was initiated by Mr. Nasi in February 2024. *See Yoni Nasi v. Remus Enterprises, 1 LLC, et al.*, No. 2024-CAB-000785 (D.C. Super. Ct. 2024). Mr. Nasi brought an action to quiet title seeking a declaration regarding the ownership of a number of properties, including the 16th Street property. *See* Second Am. Compl. at 3-4, *Yoni Nasi v. Remus Enterprises, 1 LLC, et al.*, No. 2024-CAB-000785 (D.C. Super. Ct. July 12, 2024). Both Remus 2023 and the similarly-named-but-different entity Remus Enterprises, 1 LLC—that is, Remus 2018—were parties to the *Nasi* case. *See id.* at 1. Several months later,

following significant motions practice, two individuals seeking to complete their purchase of the 16th Street property—Katherine and Philip Dickerson—intervened in the case, unopposed. *See* Consent Mot. to Intervene, *Yoni Nasi v. Remus Enterprises, 1 LLC, et al.*, No. 2024-CAB-000785 (D.C. Super. Ct. Oct. 18, 2024); Remote Mot. Hr'g (Dkt. Entry), *Yoni Nasi v. Remus Enterprises, 1 LLC, et al.*, No. 2024-CAB-000785 (D.C. Super. Ct. Oct. 21, 2024).

On November 6, 2024, with the agreement of all the parties, the trial court in the *Nasi* case issued a stipulated consent judgment.[1] *See* Consent Mot. for Entry of Order, *Yoni Nasi v. Remus Enterprises, 1 LLC, et al.*, No. 2024-CAB-000785 (D.C. Super. Ct. Oct. 30, 2024); Consent J., *Yoni Nasi v. Remus Enterprises, 1 LLC, et al.*, No. 2024-CAB-000785 (D.C. Super. Ct. Nov. 6, 2024). The trial court found, based on the parties' stipulations, that "Remus Enterprises, 1 LLC" (that is, Remus 2018) was formed as a Maryland LLC in November 2018 before being "voluntarily terminated" in July 2023, and that "Remus Enterprises 1, LLC" (that is, Remus 2023) was formed later, in November 2023. Consent J. at 1, 3, *Yoni Nasi v. Remus Enterprises, 1 LLC, et al.*, No. 2024-CAB-000785. The court found that Remus

---

[1] The document is titled "Consent Order," but the docket entry indicates that it reflects an "[o]rder granting [a] consent motion and entering judgment." *See* Dkt. Entry, *Yoni Nasi v. Remus Enterprises, 1 LLC, et al.*, No. 2024-CAB-000785 (D.C. Super. Ct. Nov. 6, 2024). Therefore, for the sake of accuracy, we refer to it as a "consent judgment" throughout this Opinion.

2018 purchased the 16th Street property in February 2023, but that "due to a typographical error in the Deed transferring ownership of the 16th Street Property to Defendant Remus Enterprises, 1 LLC . . . the name of the owner/grantee is incorrectly stated as: 'REMUS ENTERPRISES 1, LLC, A MARYLAND LIMITED LIABILITY COMPANY.'" *Id.* at 1. The trial court then found that "Remus Enterprises, 1 LLC" (Remus 2018) owned the 16th Street property, that "Remus Enterprises 1, LLC" (Remus 2023) "has no ownership or other interest in" the property, and that "Remus Enterprises, 1 LLC" (Remus 2018) entered into a contract with the Dickerson Intervenors to sell the 16th Street property; and it ordered that the 16th Street property be conveyed to the Dickerson Intervenors pursuant to that sales contract. *Id.* at 3-4. That consent judgment is now final. *See Remus Enterprises, 1 LLC, et al. v. Katherine Dickerson, et al.*, No. 25-CV-386, Mandate (D.C. Aug. 12, 2025).

Thus, in the *Nasi* consent judgment, Remus 2023 agreed, and the trial court found, that Remus 2023 and Remus 2018 are separate legal entities, and that Remus 2023 did not purchase, own, or sell the 16th Street property. At oral argument in this case, counsel for Remus 2023 acknowledged the existence of this consent judgment; acknowledged that Remus 2023 was a party to the parallel case and agreed to the consent judgment; and acknowledged that the consent judgment pertained to the 16th Street property.

## C. Background on Appeal

Before Ms. Breece filed her response brief, she filed a motion to dismiss the appeal. *See* Mot. to Dismiss, *Remus Enters. 1, LLC v. Breece*, No. 24-CV-1151 (D.C. May 16, 2025). Ms. Breece argued that Remus 2023's appeal was untimely, and also that we should apply "the principles of collateral estoppel" and hold that Remus 2023 lacked standing to bring the lawsuit based on the consent judgment's determination that Remus 2018, and not Remus 2023, bought, owned, and sold the 16th Street property. *Id.* at 2, 4-5. Remus 2023 opposed the motion. *See* Opp. to Mot. to Dismiss, *Remus Enters. 1, LLC v. Breece*, No. 24-CV-1151 (D.C. May 19, 2025). We concluded that the appeal was timely and denied the motion, but we permitted Ms. Breece to "renew[ ]" her standing argument "in her merits brief" if she wished. Order at 1, *Remus Enters. 1, LLC v. Breece*, No. 24-CV-1151 (D.C. Oct. 9, 2025). She did so, arguing that Remus 2023 "has twice acknowledged that it does not have an ownership interest in the property[:]" first, "in its Complaint, Appellant asserted that 'Remus Enterprises, 1 LLC owns the subject property and the subject property has not been transferred to any other entity,'" and second, in the *Nasi* case, Remus 2023 "affirmatively acknowledged the fact that it did not own an interest in the 16th Street Property and, furthermore, that the contract of sale was in

fact a contract between the other entity (Remus Enterprises, 1 LLC) and the intervenors therein."

## II.    Analysis

Despite the belated nature of Ms. Breece's standing argument, we may consider it on appeal because "[l]ack of standing may be raised at any time." *Speyer v. Barry*, 588 A.2d 1147, 1159 n.24 (D.C. 1991) (citing cases); *see also Riverside Hosp. v. D.C. Dep't of Health*, 944 A.2d 1098, 1103 (D.C. 2008) ("Questions of standing may be raised *sua sponte* by this or any court."). And "[w]e may affirm the judgment on a different ground than that relied upon by the court below if the appellant . . . had notice of the ground upon which affirmance is proposed, as well as an opportunity to make an appropriate factual and legal presentation with respect thereto." *Whiting v. Wells Fargo Bank, N.A.*, 230 A.3d 916, 927 (D.C. 2020) (citation modified); *see UMC Development, LLC v. District of Columbia*, 120 A.3d 37, 47 (D.C. 2015) (dismissing two of the appellant's claims for lack of standing, even though the trial court had dismissed the claims on other grounds). Remus 2023 had such notice and opportunity twice over: Ms. Breece made her standing argument based on the consent judgment in her motion to dismiss the appeal, *see* Mot. to Dismiss, *Remus Enters. 1, LLC*, No. 24-CV-1151 (D.C. May 16, 2025), and she made it again in her merits brief.

We follow "the constitutional standing requirement embodied in Article III." *District of Columbia v. ExxonMobil Oil Corp.*, 172 A.3d 412, 419 (D.C. 2017) (quoting *Grayson v. AT&T Corp.*, 15 A.3d 219, 224 (D.C. 2011)). This "irreducible constitutional minimum" has three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). We also apply "judicially-imposed limits on the exercise of jurisdiction" known as prudential standing rules, which include "the general prohibition on a litigant's raising another person's legal rights." *Id.* (citation modified) (quoting *Grayson*, 15 A.3d at 235).

In this case, resolution of the standing question depends on what preclusive effect, if any, we should afford the November 6, 2024, consent judgment issued in the *Nasi* case. "The doctrine of collateral estoppel, also known as issue preclusion, 'renders conclusive in the same or a subsequent action determination of an issue of fact or law when (1) the issue [was] actually litigated and (2) determined by a valid, final judgment on the merits; (3) after a full and fair opportunity for litigation by the parties or their privies; (4) under circumstances where the determination was essential to the judgment, and not merely dictum.'" *Whiting*, 230 A.3d at 926 (quoting *Modiri v. 1342 Rest. Grp., Inc.*, 904 A.2d 391, 394 (D.C. 2006)). Collateral estoppel "may be invoked defensively by a defendant who was not a party to the

original proceedings," as Ms. Breece is in this case. *Walker v. FedEx Office & Print Servs., Inc.*, 123 A.3d 160, 164 (D.C. 2015).

The *Nasi* consent judgment meets the second, third, and fourth requirements for issue preclusion without difficulty. Because "a consent judgment is an order of the court, indistinguishable in its legal effect from any other court order," *Puckrein v. Jenkins*, 884 A.2d 46, 54 (D.C. 2005) (citation modified), the issues addressed by this now-finalized order were decided by "a valid and final judgment on the merits," *Whiting*, 230 A.3d at 926; *see Colvin v. Howard Univ.*, 257 A.3d 474, 483 (D.C. 2021) (applying issue preclusion to a dismissal without prejudice that was "appealable to this court").

The parties in the *Nasi* case likewise had a "full and fair opportunity," *Whiting*, 230 A.3d at 926, to litigate the ownership of the 16th Street property. Nasi's action to quiet title sought "an Order and Judgment declaring that titles to . . . real property," including the 16th Street property, "remain with [Remus 2018], and [Remus 2023] has no claim to any title." Second Am. Compl. at 3, 11, *Yoni Nasi*, No. 2024-CAB-000785. The defendants in the *Nasi* case—including Remus 2023 and Remus 2018—filed, among other dispositive motions, a motion for summary judgment in which they argued that Mr. Nasi had no ownership interest in the 16th Street property and that Remus 2018 (*not* Remus 2023) purchased and

entered into a contract to sell the 16th Street property. *See* Def's Mot. for Summ. J. at 14-16, *Yoni Nasi*, No. 2024-CAB-000785 (D.C. Super. Ct. July 13, 2024). Because the resolution of Mr. Nasi's claim depended on ascertaining whether he was a member of the Remus entity that owned the 16th Street property, the issue of which Remus entity owned the 16th Street property was front and center from the inception of the *Nasi* case.

Finally, determining who purchased, owned, and contracted to sell the 16th Street property was "essential to the judgment," *Whiting*, 230 A.3d at 926, in the *Nasi* case, because the consent judgment ordered that the property be conveyed from the owner of the property (Remus 2018, *not* Remus 2023) to the Dickerson Intervenors.

The more substantial question is whether the issues resolved by the consent judgment were "actually litigated," because a consent judgment issued by a court reflects a settlement between the parties, and "settlements ordinarily occasion no issue preclusion . . . unless it is clear . . . that the parties intend their agreement to have such an effect." *Arizona v. California*, 530 U.S. 392, 414 (2000) (emphasis omitted). As a result, we have explained that "whether a consent judgment satisfies the 'actually litigated' element depends on the parties' intent as manifested by the record," including the "words of the agreement" itself. *Bell v. Weinstock, Friedman*

*& Friedman, P.A.*, 341 A.3d 1, 20, 21 (D.C. 2025) (quoting *Richardson v. Ala. State Bd. of Educ.*, 935 F.2d 1240, 1245 (11th Cir. 1991)).

The consent judgment in this case intended to conclusively settle the issue of who purchased, owned, and contracted to sell the 16th Street property. First, the text of the consent judgment supports this conclusion. It makes specific "factual findings," *Bell*, 341 A.3d at 21, related to that issue: that (1) Remus 2018 purchased the 16th Street property in February 2023; (2) the deed of transfer for that property contained a typographical error such that the name of the transferee mistakenly read "Remus Enterprises 1, LLC" rather than the correct name, "Remus Enterprises, 1 LLC"; (3) Remus 2023 did not purchase and does not own the 16th Street property; and (4) Remus 2018 entered into a contract to sell the 16th Street property. *See* Consent J. at 1-4, *Yoni Nasi*, No. 2024-CAB-000785. The presence of these findings in the stipulated consent judgment submitted by the parties and issued by the court supports the inference that the parties "specifically agreed" to be bound by the court's determination of those issues. *Bell*, 341 A.3d at 21 (quoting *Richardson*, 935 F.2d at 1245).

Second, the "wider record" also supports the conclusion that the parties intended to preclude further litigation over these issues. *Id.* at 21. The Dickersons' intervention just prior to the issuance of the consent judgment injected an additional

issue into the case: facilitating the completed sale of the 16th Street property. *See* Consent Mot. to Intervene at 3, *Yoni Nasi*, No. 2024-CAB-000785. The intervenors' pleading alleged that the sale had been stymied in part by conflicting evidence regarding the ownership and chain of title for that property. *See* Answer of Dickerson Intervenors at 8-10, *Yoni Nasi*, No. 2024-CAB-000785 (D.C. Super. Ct. Nov. 6, 2024); Second Am. Compl. at 4, 10-11, *Yoni Nasi*, No. 2024-CAB-000785 (alleging that Remus 2018 owns the 16th Street property and asserting that Remus 2023's claim of ownership "cloud[s] title" to that property).

After clarifying which entity purchased, owned, and contracted to sell the property, the trial court ordered that the 16th Street property be conveyed to the Dickerson Intervenors. *See* Consent J. at 1-4, *Yoni Nasi*, No. 2024-CAB-000785. Because the consent judgment sought to facilitate the sale of the 16th Street property to the Dickerson Intervenors by clarifying the chain of title and ordering specific performance, it is clear that the parties in the *Nasi* case, including Remus 2023, intended to be bound by that determination and thus "actually litigated" it. *See Whiting*, 230 A.3d at 926. We conclude, therefore, that the consent judgment's factual findings related to the 16th Street property have issue-preclusive effect.

Our resolution of the standing issue follows ineluctably from our resolution of the collateral estoppel issue. The consent judgment in the *Nasi* case found that

Remus 2018, and not Remus 2023, purchased, owned, and contracted to sell the 16th Street property. *See* Consent J. at 1-4, *Yoni Nasi*, No. 2024-CAB-000785. In the case before us, Remus 2023 was the sole plaintiff, and it sought to base its injury on its alleged purchase, ownership of, and contract to sell the 16th Street property. But because we afford the consent judgment in the *Nasi* case preclusive effect (and also in light of the allegation in the complaint itself that Remus 2018 owned the property), Remus 2023 cannot allege an injury based on its purchase, ownership, or sale of the 16th Street property. *See UMC Development, LLC*, 120 A.3d at 45 n.25 (explaining that the "bare assertion" of a fact in a complaint need not be credited when the pleading party "admit[s]" otherwise). And because Remus 2023's claims derive entirely from an alleged injury to Remus 2018's property interest, we conclude that Remus 2023 has not suffered an "injury in fact" sufficient to give it standing.[2] *ExxonMobil Oil Corp.*, 172 A.3d at 419. Therefore, the trial court lacked subject matter jurisdiction over the case, *see Whiting*, 230 A.3d at 927, and dismissal of the complaint is appropriate under Super. Ct. Civ. R. 12(b)(1).

---

[2] We note that Remus 2023's counsel represented at argument that he was the sole member of both LLCs, and that ownership of the 16th Street property at one point transferred to him. But no allegations regarding these facts appear in the operative complaint, and Remus 2023 did not develop any argument addressing what implications, if any, this state of affairs could have on the resolution of the standing question in this case.

### III. Conclusion

For the reasons stated above, we affirm the judgment of the trial court.

*So ordered*.